Matt Thurlow on behalf of Plaintiff's Appellants, Neighbors Against Bison Slaughter and Bonnie Lynn. I'd like to reserve two minutes for rebuttal. We are here today to ask the court to order federal defendants to complete a National Environmental Policy Act or NEPA review for Yellowstone wild bison by November 15, 2022 under the Administrative Procedure Act. We'd ask the court to issue an order with plaintiff's requested deadline and confirm that federal agencies have violated NEPA and are required to issue a supplemental EIS. This case arises out of state and tribal hunting of wild bison in Montana just north of Yellowstone National Park in Custer Gallatin National Forest in a small quarter mile bottleneck called Beatty Gulch. The thing that you, the action that you are hoping to get the government to begin and then complete is what? The action that we're trying to get them to take is to evaluate the hunting that is taking place in Beatty Gulch and that is hunting specifically beyond the 85 bison that were considered in there. Have they published a notice indicating that that's what they're going to do? Yes, they published a notice that they're going to evaluate the hunting. That notice was published two weeks ago. We provided it to the court. We don't necessarily agree with everything in the notice, but we do agree that the supplemental notice EIS that's been proposed does consider hunting. So you don't have to convince me that the government has treated your clients pretty badly and the unconscionably in starting this whole process and that if you hadn't started your lawsuit, this we would still be waiting for the publication of this notice. Nonetheless, I wonder if as a matter of law, we can direct them to complete the environmental impact by the date that you want them to. So what should we take into account in deciding whether or not we can do this as a matter of law and why we should come to the conclusion that we can? Certainly. I want to make two points real quick. One is the issue of the notice of intent two weeks ago, it doesn't change anything in this case from our perspective. The agencies have released a similar notice seven years ago and they didn't complete that notice. In this case, they've only said that they're voluntarily complying with NEPA. They don't view this as a mandatory obligation. So we still don't have assurances, even though they published the notice of intent, that they're going to actually do it. The regulation that requires them to complete the EIS within two years, is not applicable to this agency action? It's absolutely applicable. The supplemental EIS standard is if you have substantial changes in a proposed action or significant new circumstances or information, and they admitted in 2014 in a press release that they had substantial new information and changed circumstances about Bison. And then they subsequently issued the 2015 notice of intent, and then they have finished it. So why should we not let them have the full two years? Why should they act more quickly? Well, yeah, first of all, I definitely think the court needs to enter a deadline so that we have some guarantee that they're going to take action. And then in terms of the deadline, they have more than enough time still, even though they've delayed 18 months in issuing this notice of intent from the district court's ruling to get this NEPA analysis completed. They've already done some significant analysis of Bison, you know, for the last decade. In the district court, if I'm not mistaken, they represented to the district court that they would be able to complete their SEIS, I guess it is, by the fall of 23. Is that right? No, they indicated they would finish it in two years, I believe. And depending on how you read the two-year commitment, under the existing guidance at the time, the secretarial order that they cited in their briefing that the district court relied on, that targets completing the final EIS within one year of the issuance of the notice of intent, and not two years. And so I think it was reasonable to assume that the court thought they were going to get a decision much sooner than the three and a half years that are indicated here, and that it would be more like two years. And that was part of the basis of her decision. She also erroneously concluded that she didn't have authority to issue a deadline. And that's just wrong as a matter of law. There are a number of cases, the National Wildlife Federation case. On the timeliness issue, you would start the clock ticking back from 2014, not from when the district court entered its order. Is that right? That's right. At a minimum, when they admitted they had to do the review, and that's supported by the case law, the Dombeck case says, as soon as you have new information that's significant, you need to complete your NEPA review. It's not from the time that we filed suit, or they decided voluntarily to do this again. Now, this case is on remand, and so the remand will come back to the, whenever it comes back, will come back to the district court judge. So the district court judge still has jurisdiction over this case, over the remand. Is that right? It's not clear that the district court still has jurisdiction over this case. The remand order can be read as a final decision. The case has not been officially closed to our mind, but we have not heard anything from the court, and there's no indication in her order that she's retained jurisdiction. And so we think this court, that it was a final decision, and this court has jurisdiction under section 1291. Well, I think we certainly have jurisdiction over the denial of the injunction, the denial of setting the date, but I'm wondering if the district court still, the remand will come back to the district court. What I'm really asking you is after two years, and they haven't completed this, can you go back to the district court and say, look, the regulation requires two years. Two years have passed. Judge, you now have to direct them to complete it. I don't think that's going to work because I think she's decided our 7061 claim, which is why we brought this appeal. And we think the court abused its discretion in failing to order a deadline in this case, and that the Ninth Circuit should step in and order that deadline. We think the facts are very clear here in terms of the trigger and the track record. We could tell the district court to enter a deadline. That's correct. Right. In this particular case, was there an injunction in play for the district court? I thought there was just a motion to remand. Originally, we had an injunction claim, and we dropped the injunction and Baker claimed on appeal. So the question is whether or not that remand is sufficiently final for purposes of appellate review. And I think it is. I think there's clear case law that a deadline issue, a 7061 issue, sits outside of the remanded action. And there's lots of cases supporting that point. The Vietnam veterans case, the Salisbury case is a good example. I think it's a pretty clear principle of law that courts always retain jurisdiction to order egregiously delayed actions, even when there's a non-final action, as you saw in the track case by the district DC circuit. They still ordered a deadline. They didn't order a deadline, but they ordered supervision of compliance with the deadline in that case. And I also want to remind this court that there are real world impacts, negative impacts to my client. My client's 78 years old, and she's waited 10 years for this 10 minute argument. And she suffered real world impacts, including hundreds of bison being killed on her doorstep in her neighborhood, bullets coming across the road in front of her home and her neighbor's home, bison guts across the landscape, and this concentrated hunt and a few acres of land in front of her property has gone on for 10 years without any environmental analysis, without any public comment. The agencies have just done whatever they've wanted. And they even have told this court now that, you know, this action, and this is why it's so important for this court to order, that they need to meet a deadline, that the review is just warranted, not required. Even though they satisfied the standard for issuing a supplemental EIS eight years ago, it's still only warranted. And they say also that, you know, these are third-party effects, that this is not related to them at all, that they have no authorization here to do anything. And it's completely contrary to the truth and to the administrative record. The administrative record is very clear in this case, that they're participating in bison population management control, and they're using hunting as a bison management control. All right, counsel, you're a little over time, but I'll add a couple of minutes for you to come back on rebuttal. Let's hear from the government. Thank you, your honors. Thank you, your honors, and may it please the court, my name is Erica Kranz for the federal defendants. I want to start by addressing what I heard was some suspicion that this remand would not even actually occur. As counsel has, you know, informed the court, the federal government has now officially and publicly begun this NEPA process by issuing its notice of intent to prepare an environmental impact statement. It is under... Now, counsel, once the notice of intent has been published, does the regulation requiring completion of the EIS within two years come into effect? It does, although it does allow a longer time if needed with certain, you know, high level authorization within the agency. A senior agency official can't extend it. That's right. The agency... But the two-year regulation affects this environmental impact statement. Yes, and in the notice of intent, the agency cited that provision and indicated that it plans to issue a draft environmental impact statement this fall and a final environmental impact statement next year, 2023, in line with the timeline set out in that regulation. The work is happening. It is going to happen. The agency is under court order to conduct the remand that it requested in the district court, both in this case and in the case we're going to hear next. So there are two court orders granting the government's request for the remand. So that work is going to happen, is warranted. Next, while... Let me ask you a couple of questions just on this timeline. Did I misunderstand the district court record? Didn't the lawyers before the district court represent that this supplemental EIS would be... The goal was to have it finished by the fall of 23? Is that right? Your Honor, I'm sorry. I don't specifically remember what representation we made about the timeline. And the lawyers also represented that they would be willing to file status reports on the remand with the district court? I'm sorry. I don't recall that either. I thought I read that. I may be confused with the other case. No, you may well be correct. I just don't recall. I'm not trying to suggest you remember incorrectly. When does the clock start? For timeliness purposes. For timeliness. Well, we submit that it starts when the agencies requested the voluntary remand here. We do not agree that the agencies admitted in 2014 that supplemental NEPA was legally required. The notice that they... New information that they needed to consider in that? They said there was substantial information. The language in the regulation, though, is significant new information about the environmental effects of agency action. I acknowledge that the language the agency used is similar, but it doesn't track the language, precisely the language in that regulation. And we don't concede that the agency was required to perform supplemental NEPA at that point and that failing to do so in the intervening years was a violation of NEPA. Did I understand you to just say to Judge Peos that the two years started when the agencies acknowledged, asked for the voluntary remand? No. I'm sorry if I misunderstood the question. I submit that to the extent the clock has started here at all for assessing whether there has been agency action unreasonably delayed, the clock for that would start when the agencies requested voluntary remand. As for when the two-year clock started, it started when the agencies issued the notice of intent. Okay. So how would a judge decide whether or not, what would a judge use as the basis for deciding whether or not agency action was unreasonably delayed? Well, the first thing you would have to decide is whether there, in fact, was a, the statutory obligation to take some action was triggered. That's the absolute threshold thing you have to decide. And importantly, no court has decided that. We're in this unusual situation where there hasn't been a merits determination that there was a statutory obligation that the agency failed to take here. I appreciate the neighbors' asserts that there was, but that is not the procedural posture of this case. There's been no determination of that. That's the very first thing. Only after you have identified a statutory obligation that was triggered, do you proceed to ask, well, was the, has the agency unreasonably delayed taking that action? And only once you answer that question, would you go on to answer the question, okay, what's the appropriate remedy if the agency has unreasonably... Are you familiar with Friends of Clearwater? Friends of the Clearwater, one of our cases? Uh, not enough to talk about in detail now. Okay. Well, then I won't press you. But there was a similar situation in Friends of the Clearwater where we said that whenever the agency has important new information, that NEPA demands a timely and reasonable agency action, which in my mind suggests that when you knew back in 2014 that there was important information related to the bison management program, that the clock should have started ticking then. But it's okay. Again, you know, we've, as we've argued in our brief, we do not think the new information that neighbors has raised here rises to the level of significant new information about environmental effects that the agency hasn't already studied. Agency did study the effects of bison hunting originally. And what was your reason for asking for a voluntary agreement? The, what's in the record is basically that the agency appreciates given the amount of time and that there is some new information. They didn't use the words significant new information about environmental effects. They weren't compelled to, but they decided to do anyway. There has to have been a reason. Just in a sentence, tell me what the reason was. I don't know anything more than that. Oh, okay. Counselor, does the fact that there is an order in this case affect or impact the plaintiff's ability to seek relief if, for example, the government does not comply with the guidelines that it now has represented that it would? So for example, you mentioned that the, a draft is going to be prepared and issued by the fall. And I thought, I do remember the 2023 date as well, but maybe I'm mixing it up with the, one of the Cottonwood cases. So whatever the timeline is, if the government fails to comply with that, can the plaintiff come into court and go before the judge in the same action without having to initiate a new lawsuit to argue the unreasonable delay? I think they could, yes. And I think that is a much more sort of normal way of going about this. So there's certainly case law of instances where there's been a court-ordered remand. And then if the agency does not do the remand on a reasonable timeline, you know, the other side comes back and says, they're taking too long. Please give us some relief. Please put them on a deadline. That's a much more ordinary situation where we see these kinds of arguments. Not one here where upon a request for voluntary remand, an agency is being put on a timeline. I want to also, I think it's really important to make this point that there are great reasons not to put the agency on a timeline here. This court has recognized that when you impose procedural constraints on an administrative process, those can end up being substantive constraints too. Here, if you want the agency to do a good job, if you wanted to analyze all of the options available to it, the expected environmental effects of its own actions, and the actions of the other entities that take fully independent actions related to Bison, you should give the agency the time it needs to do a good job so that you do not limit the agency's ability to work with its partners, to appreciate the sensitivities, and to analyze all this information that's available to it now. We think the district court got it right here. Upon analyzing pretty brief briefing from neighbors before it, we think the district court struck the right balance here. If you think that the district court didn't or didn't explain well enough how it reached its conclusion that no deadline should be imposed here, at most, we think you should remand to the district court so that it can make that decision in the first instance. But of course, we don't think you need to do that. We ask you to affirm the decision granting the request for voluntary remand. All right. Thank you, counsel. Please unmute. On rebuttal, I just want to make a few brief points. I think in litigation, federal defendants take one position, and it's completely undermined by the administrative record. And what happened in this case was we got the administrative record, we're on the eve of summary judgment in June 2020, and then they decided to voluntarily remand. And that deprived us of the opportunity to have these issues addressed on summary judgment and has potentially insulated them from the court's jurisdiction. Although we don't think this deadline issue is in any way outside the court's jurisdiction to decide. I want to refer the court to the Turtle Island case because that case says look to the substantial effect rather than the terminology of orders. And here, you have an order that's throwing plaintiffs out of court. They've decided the 7061 issue. And if we were to bring that again, all those issues have been litigated. And that issue is properly before this court on appeal. And I want to go back to this issue of voluntary versus mandatory, again, because they still haven't acknowledged that they're required to do this. They can't provide a reason why they're doing this now. And that just belies their bad motivations in this litigation and the fact that there are 486 bison being hunted now in Beatty Gulch per season when they only analyzed the hunting of 85 bison. That is a hugely significant effect. They've recognized that and they don't want to comply with their obligations under the law. They don't think that NEPA is mandatory. NEPA is mandatory. It requires you to do your analysis as soon as you're in the possession of significant information. And honestly, 2014 is a generous deadline in this case because that's when they acknowledged they had to do it. But they had that information well before even 2014. The hunting that exceeded the scope of the 2000 rod and that started having the really negative impacts on my clients and others in Beatty Gulch, that started in 2012 and earlier. So I hope that the clients will issue a deadline and we think our deadline is more than reasonable if they devote sufficient resources to get this done. All right. Thank you very much, counsel, to both sides for your argument. The matter is submitted for a decision.
judges: PAEZ, NGUYEN, Eaton